**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | NO. |
| | : | |
| v. | : | VIOLATION: |
| | : | 18 U.S.C. § 1956(h) (Conspiracy to |
| YANG BAN | : | Launder Monetary Instruments) |
| | : | |
| | : | FORFEITURE: 21 U.S.C. § 853(p); |
| Defendant. | : | 18 U.S.C. § 982(a)(1)(A) |

**I N F O R M A T I O N**

The United States Attorney charges that:

**GENERAL ALLEGATIONS**

**A.** **Entities**

1. Yang Ban: a company established in the British Virgin Islands in 2014. Yang Ban covertly conducted U.S. dollar transactions for its North Korean customers. Yang Ban sold and traded commodities to customers in North Korea.

2. SINSMS Pte. Ltd: a Singapore-based logistics commodities company that supplied customers located in North Korea. The Treasury Department's Office of Foreign Assets Control designated China-based Dalian Sun Moon Star International Logistics Trading Co., Ltd. and its Singapore-based affiliate, SINSMS, on August 15, 2018. These companies worked together to facilitate illicit shipments to North Korea using falsified shipping documents, including exports of alcohol, tobacco, and cigarette-related products.

B.     **North Korean Sanctions Regulations**

3.      On March 15, 2016, the President, to take additional steps with respect to the previously described national emergency, issued Executive Order 13722 to address the Government of North Korea's continuing pursuit of its nuclear and missile programs. Pursuant to that authority, on March 16, 2016, the Secretary of the Treasury promulgated the "North Korea Sanctions Regulations." See 31 C.F.R. § 510.101 *et seq*. Executive Order 13722 and the North Korea Sanctions Regulations prohibit the export of financial services from the United States or by any U.S. person to North Korea, unless exempt or authorized by OFAC.

4.      Foreign financial institutions maintain U.S. dollar bank accounts at banks in the United States ("Correspondent Banks"). Correspondent Banks accounts are broadly defined to include any account established for a foreign financial institution to receive deposits from, or to make payments or disbursements on behalf of, the foreign financial institution, or to handle other financial transactions, such as currency conversions, related to such foreign financial institution. See 31 C.F.R. § 1010.605. Correspondent Banks serve to support international wire transfers for foreign customers in a currency that the foreign customer's overseas financial institution normally does not hold on reserve, such as U.S. dollars and to conduct currency conversions to/from U.S. dollars. It is through these accounts that the funds used in U.S. dollar transactions clear and/or are converted into other currencies.

5.      The North Korea Sanctions Regulations further prohibited the export of financial services, to include Correspondent Banking activities, by any U.S. person.

6.      The North Korea Sanctions Regulations define "U.S. person" as any:

   a.    United States citizen or permanent resident alien;

   b.    entity organized under the laws of the United States or any jurisdiction

within the United States, including foreign branches; or

c. any person in the United States.

### C. Bank Secrecy Act Criminalizes Correspondent Banking With North Korean Financial Institutions

7. According to the Treasury Department, the global financial system, trade flows, and economic development rely on correspondent banking relationships. To protect this system from abuse, U.S. financial institutions must comply with national anti-money laundering requirements set forth in the Bank Secrecy Act as well as sanctions programs administered by OFAC. The Financial Crimes Enforcement Network ("FinCEN") is responsible for administering the Bank Secrecy Act in furtherance of its mission to safeguard the U.S. financial system from illicit use.

8. The Bank Secrecy Act requires U.S. financial institutions to take anti-money laundering measures when dealing with foreign financial institutions engaged in correspondent banking of U.S. dollar transactions.

9. The Bank Secrecy Act broadly defines foreign financial institutions to include dealers of foreign exchange and money transmitters in a manner not merely incidental to their business. *See* 31 C.F.R. § 1010.605(f).

10. Section 311 of the USA PATRIOT Act, codified at 31 U.S.C. § 5318A as part of the Bank Secrecy Act, gives FinCEN a range of options, called special measures, that can be adapted to target specific money laundering and terrorist financing concerns. A Section 311 finding and the related special measure are implemented through various orders and regulations incorporated into 31 C.F.R. Chapter X.  One such special measure imposed under Section 311 protects the integrity of the U.S. financial system by prohibiting financial institutions from causing

U.S. financial institutions to engage in any type of financial transaction with any entity within the jurisdiction deemed an area of money laundering concern.

11. On June 1, 2016, FinCEN issued a Notice of Finding for a Section 311 designation of North Korea. Specifically, FinCEN's finding deemed *the entire North Korean financial sector* as a jurisdiction of primary money laundering concern. *See* Federal Register, Vol. 81, No. 107 (June 3, 2016).

12. In November 2016, FinCEN published a final rule implementing the most severe special measure against the entire North Korean financial sector. *See* Federal Register, Vol. 81, No. 217 (Nov. 9, 2016); 31 C.F.R. § 1010.659.  The special measure bars U.S. financial institutions from maintaining a correspondent account for any North Korean financial institution or any party acting on its behalf.  A second special measure requires covered financial institutions to exercise "enhanced due diligence" and to take reasonable steps not to process a transaction for the correspondent account of a foreign bank in the United States if such a transaction involves a North Korean financial institution. Because of the finding that the entire North Korea financial sector was a primary money laundering concern, FinCEN cut all North Korean financial institutions -- and entities acting on their behalf -- off from any trade in U.S. dollar transactions via correspondent banking.  The Chairman of the House Foreign Affairs Committee stated that the Section 311 designation "impacts all financial institutions, anywhere, who now have a choice to make between doing business with North Korea and being cut off from financial transactions with the United States and the international financial system."

13. A bank that violates the Section 311(b) special measure, codified at 31 U.S.C. § 5318A(b), or of the regulations published at 31 C.F.R. § 1010.659, is punishable criminally pursuant to 31 U.S.C. § 5322.

14. The North Korean financial sector is comprised of state-controlled financial institutions that use "front companies to conduct international financial transactions that support the proliferation of WMD and the development of ballistic missiles in violation of international and U.S. sanctions," and are subject to "little or no bank supervision or anti-money laundering or combating the financing of terrorism [] controls."  81 Fed. Reg. at 78715.

15. The United Nations Panel of Experts found that once North Korea could register a front company without overt links to the country through the assistance of foreign nationals, it became significantly easier for its firms to pass rudimentary due diligence checks by financial institutions and open and maintain bank accounts.

   **D.**     **Bank Fraud**

16. The bank fraud statute is broadly construed to reach anyone engaged in a scheme or artifice to defraud, including a scheme to actively conceal material information through deceptive conduct, with the intent to mislead and suppress the truth, even in the absence of an independent legal duty to disclose such information

17. The Government is not required to prove that a defendant intended to cause financial harm, nor that the defendant ultimately caused harm to a financial institution.

18. Exposing a bank to a risk of loss establishes liability under the bank fraud statute. It is not required to evaluate whether the scheme would create a substantial likelihood of risk of loss to a bank to support a bank fraud conviction.  Rather, all that is needed is that the scheme placed the financial institution at risk of civil liability or financial loss.

19. As a result of the North Korea Sanctions Regulations, the FinCEN 311 action, and overall risk management, Correspondent Banks began in March 2016 refusing to process any U.S.-dollar wire transactions involving entities in North Korea.

20. In turn, North Korean entities used front companies to pay their counterparties in U.S. dollars. The use of front companies and stripping material information, such as the true counterparties to the transaction, from wire transfer instructions influence the decision-making of the Correspondent Banks into processing transactions they otherwise normally would not, and thus constitutes bank fraud.

21. Correspondent Banks that processed transactions for North Korean customers would be subject to criminal and civil penalties for Bank Secrecy Act, anti-money laundering, and sanctions violations.

## COUNT ONE

22. Between in or about March 2016 and continuing thereafter up to and including on or about May 14, 2018, within the District of Columbia and elsewhere, defendant YANG BAN did knowingly combine, conspire, confederate and agree with other persons both known and unknown to transport, transmit, transfer, and attempts to transport, transmit, and transfer funds from a place in the United States to and through a place outside the United States, that is, Singapore, with the intent to promote the carrying on of specified unlawful activity, that is, violations of section 1344 (relating to bank fraud) and section 206 (relating to penalties) of the International Emergency Economic Powers Act.

### Goals of the Conspiracy

23. The goals of the conspiracy were:

   a. to enrich co-conspirators;

   b. to conduct transactions in U.S. dollars with North Korean entities otherwise barred from accessing the U.S. financial system;

   c. to facilitate the purchase of products for North Korean end users;

**Manner and Means of the Conspiracy**

24. The manner and means by which defendants and their co-conspirators sought to accomplish the goals of the conspiracy, included, among others, the following:

    a. the defendant and co-conspirators agreed to export products to North Korea;

    b. defendant and co-conspirators used a non-transparent method of payment, namely, using front companies, to conceal the involvement of North Korean entities, and in so doing deceiving financial institutions in the United States to process payments; and

    c. defendant and co-conspirators listed false end destinations and customers on documents in order to conceal the true destinations and end users.

**Overt Acts**

25. In furtherance of the conspiracy and to achieve the goals and purposes thereof, the defendant and co-conspirators, both known and unknown to the United States, committed and caused to be committed, in the District of Columbia and elsewhere, the following overt acts, among others:

    a. On or about September 30, 2016, Yang Ban caused an employee to inform a North Korean customer that Yang Ban was unable to use a related company for further business with North Korea due to bank restrictions on such transactions.

(**Conspiracy to Commit Launder Monetary Instruments**, in violation of Title 18, United States Code, Section 1956(h))

## **FORFEITURE ALLEGATION**

1.  Upon conviction of the offense alleged in Count One of this Information, the defendant shall forfeit to the United States any property, real or personal, involved in a transaction or attempted transaction in violation of this offense, and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1)(A). The United States will also seek a forfeiture money judgment for $561,428.39.

2.  If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

 a. cannot be located upon the exercise of due diligence;

 b. has been transferred or sold to, or deposited with, a third party;

 c. has been placed beyond the jurisdiction of the Court;

 d. has been substantially diminished in value; or

 e. has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

(**Criminal Forfeiture**, pursuant to Title 18, United States Code, Section 982(a)(2)(A); and Title 21, United States Code, Section 853(p))

                                            Respectfully submitted,

                                            MICHAEL R. SHERWIN, N.Y. Bar No. 4444188
                                            Acting United States Attorney

By: _____

                                            Zia M. Faruqui
                                            Assistant United States Attorney

                                            David C. Recker
                                            National Security Division, Trial Attorneyz